IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 30, 2014

**IN RE ANYA G.**

**Appeal from the Juvenile Court for Hamilton County**
**No. 253263      Robert D. Philyaw, Judge**

_____

**No. E2013-02595-COA-R3-PT-FILED-AUGUST 27, 2014**

_____

This is a termination of parental rights case, focusing on Anya G. ("the Child"), the minor child of Melisa G. ("Mother"). In October 2011, temporary custody of the Child was granted to the Tennessee Department of Children's Services ("DCS"), and the Child was placed in foster care. DCS subsequently filed a petition to terminate the parental rights of Mother and the Child's father, Michael G., on December 27, 2012.[1] The petition alleged as statutory grounds for termination abandonment by failure to visit, abandonment by an incarcerated parent who exhibited wanton disregard for the welfare of the child prior to incarceration, and substantial noncompliance with the permanency plans. Following a bench trial, the trial court granted the petition as to Mother upon finding that DCS had proven by clear and convincing evidence the grounds of (1) abandonment by engaging in conduct prior to her incarceration that exhibited a wanton disregard for the welfare of the child and (2) substantial noncompliance with the permanency plans. The court also found clear and convincing evidence that termination of Mother's parental rights was in the Child's best interest. Mother has appealed. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

Berry Foster, Chattanooga, Tennessee, for the appellant, Melisa G.

Robert E. Cooper, Jr., Attorney General and Reporter, and Alexander S. Rieger, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of

_____

[1]Michael G. is not a party to this appeal.

Children's Services.

Galen Pickard, Chattanooga, Tennessee, Guardian Ad Litem.

**OPINION**

I. Factual and Procedural Background

Mother is a parent of two minor children: Samantha M., now age sixteen, and Anya G., now age four.[2] On August 18, 2011, Mother and Samantha were involved in an argument regarding Mother's boyfriend. Mother took the Child, who was two years old at the time, and placed the Child in Mother's vehicle without a car seat. Mother indicated that she was upset and was leaving to "cool off." Fearing for her sister's safety, Samantha tried to stop Mother from departing. During the incident, Mother drove over Samantha's legs with her vehicle. Consequently, Mother was arrested and charged with reckless endangerment. Mother was placed on probation, and DCS began working with Mother regarding both children. Subsequently, a referral was made with regard to Samantha's cutting herself. Upon the DCS workers' interview of Samantha, the daughter allegedly disclosed that Mother was using drugs such as crack cocaine in the home and prostituting herself. Samantha informed DCS that she was the primary caretaker for the Child. Samantha also disclosed that Mother's boyfriend, T.B., was selling illegal drugs from Mother's home.

DCS visited Mother's home on October 3, 2011, finding it to be dirty and unsuitable. Mother failed a drug screen administered by DCS that day, testing positive for both crack cocaine and marijuana. Upon the filing of a petition, temporary custody of the children was awarded to DCS on October 6, 2011. The children were subsequently adjudicated dependent and neglected on December 29, 2011. Mother was arrested on December 7, 2011, and again on April 22, 2012; June 16, 2012; and July 12, 2012. She was incarcerated at the time the petition to terminate parental rights was filed on December 27, 2012.

DCS alleged in its petition, *inter alia*, that Mother had engaged in mere token visitation with the Child prior to her incarceration, thereby abandoning the Child pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv) (2014). The petition further alleged that Mother had abandoned the Child by engaging in conduct prior to her incarceration that exhibited a wanton disregard for the welfare of the child, also pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv). As an additional ground for termination, the petition alleged that Mother had failed to substantially comply with the terms of her permanency

---

[2]Mother's parental rights regarding Samantha are not at issue in this proceeding.

plans, pursuant to Tennessee Code Annotated § 36-1-113(g)(2). Finally, the petition alleged that termination of Mother's parental rights was in the Child's best interest.

The trial court terminated Michael G.'s parental rights on June 4, 2013. The trial regarding Mother's parental rights was conducted over three non-consecutive days in August, September, and October 2013. Although Mother testified on the first day of trial, she failed to appear for the subsequent dates. Mother's attorney informed the court at the beginning of the second day of trial that he had received a message from Mother stating that she was unable to appear due to a medical emergency with a family member. The DCS worker subsequently stated that she had become aware that warrants were recently filed against Mother. The hearing proceeded in Mother's absence.

Following the trial, the court entered an order, finding that Mother's demeanor in court was "that everything was someone else's fault and she smiled and smirked in a way not appropriate for someone in her position as a parent facing the loss of her children." The court's order, *inter alia*, states:

> Karen Tittsworth, DCS worker, testified of the mother's hostile attitude, profanity, and the great lengths to which she would go to be deceptive while this case was pending. Anya came into foster care in October 2011 and Ms. Tittsworth has had the case continually since that time. Mother's goals were to address her addiction, particularly to cocaine, and achieve stable housing and employment. Although she participated in the Transformation Project, testimony showed she was dishonest and deceptive regarding her drug screens and continued to test positive during the pendency of this case.

> Partnership worker Yashica Baker likewise testified of the mother's hostility and refusal to submit to drug screens. [Mother] continued to live with her mother even though she and her mother have a volatile relationship. Mother was diagnosed with bi-polar disorder but did not comply with efforts to arrange a mental health assessment.

> Mother has never shown proof of employment or any signs of forward progress on the goals on her plan of care. The DCS worker stated they were no closer to returning Anya at this or any other point than when she first came into care. Any meaningful or consistent parenting time was hindered by Mother's frequent periods of incarceration and it is believed she currently has two (2) outstanding warrants. [Mother] continued to maintain a relationship with a man who has a lengthy criminal record and who was, in some part,

involved in the incident which led to the removal of the children from the mother's care.

From all of which the Court found the State carried the burden of proof by presenting clear and convincing proof that the mother abandoned Anya [G.] by incarceration, was in substantial non-compliance with the goals of the permanency plan, and that it was in the best interest of the child for the parental rights of the mother to be terminated.

The foster mother, [P.G.], testified of Anya's progress since coming into custody from the constant screaming, lack of communication skills, and inappropriate self-touching. Anya is now in a pre-kindergarten program doing well. She has some aggressive behaviors and suffers from speech problems but does not exhibit the former behaviors since she has not seen her mother for an extended period of time. [P.G.] and her husband are planning to proceed with adoption as soon as that becomes an option.

Following this initial order, the trial court entered a Termination of Parental Rights and Final Decree of Complete Guardianship, terminating Mother's parental rights to the Child. This decree erroneously lists the ground of persistent conditions, pursuant to Tennessee Code Annotated § 36-1-113(g)(3), as an additional basis for termination. Mother timely appealed. While the appeal was pending, DCS filed a motion seeking leave of court to have a corrected order entered. Mother's counsel consented to this action. This Court then remanded the matter to the trial court for entry of a corrected order.

The trial court thereafter entered an Amended Termination of Parental Rights and Final Decree of Complete Guardianship, which decree states in pertinent part:

3. Grounds for the termination of the parental rights of Melisa [G.] to the child, Anya [G.] exist, in that:

(A) Respondent Melisa [G.] abandoned the subject child in that she was incarcerated part of the four (4) months prior to the filing of this Petition which exhibits a wanton disregard for the welfare of the child. Specifically, the mother was arrested on December 7, 2011, April 22, 2012, June 16, 2012, and July 2, 2012, and has just recently been released. The child came into custody on October 5, 2011. The mother is repeatedly incarcerated and continues to test positive for drugs for which she has no prescription. Respondent continued to incur criminal charges and violate her probation by testing positive for cocaine.

-4-

(B)     Respondent, Melisa [G.], has failed to comply in a substantial manner with the statement of responsibilities set out in periodic foster care plans prepared for and signed by said Respondent, following the subject child being found to be dependent and neglected by the Juvenile Court of Hamilton County. [DCS] has explained to Respondent those reasonable responsibilities, which are directly related and aimed at remedying the conditions, which necessitate foster care placement. Specifically, Respondent failed to: obtain stable housing, refused to complete a mental health assessment which was to be paid for by the Department, did not follow through with drug treatment as recommended by her alcohol and drug assessment, has continued to incur criminal charges and violate her probation, has tested positive for cocaine, has not addressed domestic violence issues, and has not participated in individual or family counseling. The mother later violated her probation in April 2012 because she was arrested again for vandalism and malicious mischief. The mother tested positive for cocaine on May 8, 2012 in her initial testing to restart probation and her levels were extraordinarily high.

4.      Pursuant to T.C.A. § 36-1-113(i), it is for the best interest of the subject child and the public that all of the parental rights of the Respondent, Melisa [G.], to the child, Anya [G.] be forever terminated and that the custody, control and complete guardianship of said child should now be awarded to the State of Tennessee, Department of Children's Services with the right to place said child for adoption and to consent to any adoption *in loco parentis*, in that

(a)     Respondent, Melisa [G.], has not maintained regular visitation or other contact with the child.

(b)     There is no meaningful relationship between the Respondent and child.

(c)     A change of caretakers and home is likely to have a highly negative effect on the child. The child is in an adoptive home and thriving in that placement.

(d)     Respondent, Melisa [G.], has shown brutality, abuse or neglect toward the child or another child in the family or household. When the children were removed on August

-5-

18, 2011, the mother tried to run over Samantha with a
car and Anya witnessed this and remembers it to this day.
The mother was allegedly high on crack cocaine at the time.

The amended decree therefore terminated Mother's parental rights to the Child based on the
statutory grounds of (1) abandonment by engaging in conduct prior to incarceration that
exhibits a wanton disregard for the welfare of the child and (2) substantial noncompliance
with the permanency plans.

## II.  Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1.     Whether the trial court violated Mother's due process rights under the
       Fourteenth Amendment of the U.S. Constitution because the order
       terminating Mother's parental rights included the statutory ground of
       persistent conditions, although this ground was not alleged in the
       petition to terminate parental rights.

2.     Whether DCS's lack of reasonable efforts prevented reunification of
       Mother and the Child.

3.     Whether the trial court erred by finding clear and convincing evidence
       to support termination of Mother's parental rights on the statutory
       ground of substantial noncompliance with the permanency plans.

4.     Whether the trial court erred by finding clear and convincing evidence
       to establish that the termination of Mother's parental rights was in the
       best interest of the Child.

## III.  Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether
the trial court's findings, made under a clear and convincing standard, are supported by a
preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The
trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a
presumption of correctness unless the evidence preponderates against those findings. *Id.*;
Tenn. R. App. P. 13(d). Questions of law, however, are reviewed *de novo* with no
presumption of correctness. *In re Bernard T.*, 319 S.W.3d 586, 597 (Tenn. 2010). The trial
court's determinations regarding witness credibility are entitled to great weight on appeal and

shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has instructed:

> In light of the constitutional dimension of the rights at stake in a termination proceeding under Tenn. Code Ann. § 36-1-113, the persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The purpose of this heightened burden of proof is to minimize the possibility of erroneous decisions that result in an unwarranted termination of or interference with these rights. *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005). Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at 546; *State Dep't of Children's Servs. v. Mims* (In re N.B.), 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.,* 319 S.W.3d at 596.

### IV. Amended Order

Mother's brief, which was filed prior to the trial court's entry of an amended final decree, raises the issue of whether Mother's due process rights under the Fourteenth Amendment of the U.S. Constitution were violated when the order terminating Mother's parental rights included the ground of persistent conditions, inasmuch as this ground was not alleged in the petition to terminate parental rights. As explained above, an amended final decree was later entered by the trial court, which properly listed as the only grounds for termination (1) abandonment by engaging in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child and (2) substantial noncompliance with the permanency plans. Therefore, Mother's first issue on appeal is now moot.

V. Reasonable Efforts by DCS

Mother contends that DCS did not provide her with reasonable assistance in obtaining the goal of reunification with the Child. As this Court has previously elucidated:

> [I]n the absence of aggravating circumstances, [DCS] is statutorily required to make reasonable efforts to reunite a family after removing children from their parents' custody. Tenn. Code Ann. § 37-1-166(a)(2), (g)(2) (2005); *In re M.E.*, No. M2003-00859-COA-R3-PT, 2004 WL 1838179, at *9 (Tenn. Ct. App. Aug.16, 2004), perm. app. denied (Tenn. Nov. 8, 2004); *In re C.M.M.*, 2004 WL 438326, at * 7. Because of this obligation, the Department must not only establish each of the elements in Tenn. Code Ann. § 36-1-113(g)(3)(A), it must also establish by clear and convincing evidence that it made reasonable efforts to reunite the family and that these efforts were to no avail. *In re C.M.M.*, 2004 WL 438326, at *7 n. 27, *8.

> While the Department's reunification efforts need not be "herculean," the Department must do more than simply provide the parents with a list of services and send them on their way. *In re C.M.M.*, 2004 WL 438326, at *7. The Department's employees must use their superior insight and training to assist the parents in addressing and completing the tasks identified in the permanency plan.

> For the purpose of proceedings such as this one, the Department's reunification efforts are "reasonable" if the Department has exercised "reasonable care and diligence . . . to provide services related to meeting the needs of the child and the family." Tenn. Code Ann. § 37-1-166(g)(1) (2005). The reasonableness of the Department's efforts depends upon the circumstances of the particular case. The factors that courts use to determine the reasonableness of the Department's efforts include: (1) the reasons for separating the parent from his or her children, (2) the parent's physical and mental abilities, (3) the resources available to the parent, (4) the parent's efforts to remedy the conditions that required the removal of the children, (5) the resources available to the Department, (6) the duration and extent of the parent's remedial efforts, and (7) the closeness of the fit between the conditions that led to the initial removal of the children, the requirements of the permanency plan, and the Department's efforts.

> The Department does not have the sole obligation to remedy the conditions that required the removal of children from their parents' custody. When

reunification of the family is a goal, the parents share responsibility for addressing these conditions as well. Thus, parents desiring the return of their children must also make reasonable and appropriate efforts to rehabilitate themselves and to remedy the conditions that required the Department to remove their children from their custody.

*In re Giorgianna H.*, 205 S.W.3d 508, 518-19 (Tenn. Ct. App. 2006) (other internal citations omitted).

In this case, the evidence demonstrated that Mother failed to take any individual responsibility for addressing the conditions leading to removal of the Child from her custody. As Ms. Tittsworth testified, the primary problem that Mother needed to address in order to regain custody was her drug addiction. DCS provided Mother with a referral to Bradford Health Services ("Bradford") for an alcohol and drug assessment. Bradford recommended that Mother attend intensive outpatient treatment, but Mother did not follow through with that treatment, blaming transportation difficulties. Mother made no progress regarding treatment for her drug addiction for several months. Ms. Tittsworth testified that Mother was uncooperative with any and all efforts to provide assistance. According to Ms. Tittsworth and Ms. Baker, Mother was openly hostile and abusive toward them, often resorting to cursing, yelling, and name-calling. Despite Mother's uncongenial behavior, Ms. Tittsworth made two referrals for Mother regarding employment, provided Mother with at least three bus passes, arranged for Mother to have visitation with the Child when she was not incarcerated, provided Mother with housing referrals, and arranged for Mother to undergo a psychological evaluation. Mother, however, made no progress whatsoever toward these goals on her permanency plans, refusing or ignoring all offers of assistance. As Ms. Tittsworth related, Mother instead placed blame onto others for her problems and refused to accept responsibility for her own behavior.

As this Court has previously stated:

Reunification is a "two-way street," and the law does not require DCS to carry the entire burden of this goal. DCS cannot reasonably be expected to do everything for a parent.

*In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576 at *16 (Tenn. Ct. App. Oct. 13, 2008). We conclude that the efforts toward reunification expended by DCS in this case were clearly reasonable, despite Mother's hostile attitude toward DCS's efforts to provide assistance. This issue is without merit.

VI. Substantial Noncompliance with Permanency Plans

The trial court terminated Mother's parental rights, *inter alia*, on the statutory ground that she failed to substantially comply with the reasonable responsibilities set out in her permanency plans. Tennessee Code Annotated § 36-1-113(g)(2) provides, as relevant to this action:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> . . .
>
> > (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to the provisions of title 37, chapter 2, part 4.

The initial permanency plan in this case required Mother, *inter alia*, to complete an alcohol and drug assessment and follow all recommendations, including submitting to random drug screens. Mother was also required to have a psychological assessment to address anger management issues, parenting skills, domestic violence issues, and any other mental health issues. In addition, Mother was required to obtain and maintain suitable housing, visit the Child regularly, pay child support, and maintain regular contact with DCS representatives. Subsequent permanency plans incorporated the same requirements listed above, as well as required Mother to (1) resolve her legal issues and not incur new criminal charges, (2) cease associating with persons with a violent or criminal history, (3) achieve and maintain sobriety, and (4) demonstrate appropriate parenting skills.

As previously noted, the trial court found that Mother had failed to substantially comply with her responsibilities set out in the permanency plans. The court explained, in relevant part:

> Specifically, [Mother] failed to: obtain stable housing, refused to complete a mental health assessment which was to be paid for by the Department, did not follow through with drug treatment as recommended by her alcohol and drug assessment, has continued to incur criminal charges and violate her probation,

-10-

has tested positive for cocaine, has not addressed domestic violence issues, and
has not participated in individual or family counseling.

Having carefully reviewed the record, we conclude that the preponderance of the evidence supports these findings. Mother had continued to reside with the maternal grandmother, with whom Ms. Tittsworth testified Mother had a volatile and abusive relationship. Mother had never completed the DCS-provided mental health assessment, despite the scheduling and rescheduling of her appointments to do so. Mother did not follow through with drug rehabilitation treatment at Bradford prior to the filing of the termination petition, and she continued to fail drug tests and incur drug-related criminal charges.

Following the filing of the termination petition, Mother completed inpatient treatment through a different facility. Mother subsequently relapsed, however, and did not complete her aftercare program. Mother was released from that program because she stopped attending classes and presented a forged doctor's excuse. Mother continued her relationship with T.B., regardless of the volatility of that relationship due to drug and domestic violence problems. Mother experienced ongoing legal issues, with new warrants having been filed against her during the course of the termination trial. By her testimony at trial, Mother admitted that she needed to "get herself together" before she could effectively parent the Child. Mother had also failed to visit the Child regularly, demonstrate appropriate parenting skills, maintain regular contact with DCS representatives, or pay more than token child support. We conclude that the evidence in this case preponderates in favor of the trial court's determination, by clear and convincing evidence, that Mother was in substantial noncompliance with the permanency plans.

VII. Abandonment by Exhibiting Wanton Disregard Prior to Incarceration

The trial court also terminated Mother's parental rights based on the ground of abandonment by engaging in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. Although Mother did not appeal this statutory ground, our Supreme Court has instructed us to review the trial court's findings of fact and conclusions of law as to each ground for termination. *See In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Tennessee Code Annotated § 36-1-102(1)(A) defines abandonment, in relevant part, as:

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent

or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, **or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child**;
. . . .

(Emphasis added.)  Regarding the ground of abandonment by wanton disregard, the statute does not limit the parent's conduct to any particular four-month period prior to incarceration. *See In re Audrey S.*, 182 S.W.3d 838, 865 (Tenn. Ct. App. 2005).

The trial court made the following pertinent finding in its final decree:

Specifically, the mother was arrested on December 7, 2011, April 22, 2012, June 16, 2012, and July 2, 2012, and has just recently been released.  The child came into custody on October 5, 2011.  The mother is repeatedly incarcerated and continues to test positive for drugs for which she has no prescription.  [Mother] continued to incur criminal charges and violate her probation by testing positive for cocaine.

The preponderance of the evidence adduced at trial supports these findings.  During the fourteen-month period that the Child had been removed from her custody prior to the filing of the termination petition, Mother incurred multiple criminal charges, most of which were drug-related.  Mother continued to incur criminal charges through the course of the termination trial.  Mother repeatedly failed drug screens administered pursuant to her probation and failed to present any effort toward rehabilitation until well after the termination petition was filed.

The above-referenced statute does not define "wanton disregard."  We have previously explained the purpose behind this statutory section, however, as follows:

Tenn. Code Ann. § 36-1-102(1)(A)(iv) also reflects the commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child.  Incarceration severely

-12-

compromises a parent's ability to perform his or her parental duties. A parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child. However, parental incarceration is not an infallible predictor of parental unfitness. Accordingly, Tenn. Code Ann. § 36-1-102(1)(A)(iv)'s second test for abandonment does not make incarceration alone a ground for the termination of parental rights. An incarcerated or recently incarcerated parent can be found guilty of abandonment only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child. Thus, the parent's incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child.

*In re Audrey S.*, 182 S.W.3d at 866 (internal citations omitted). As the Court further explained, "We have repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 868.

Upon our review of the record in this cause, we conclude that Mother engaged in conduct prior to her incarceration that exhibited a wanton disregard for the welfare of the Child. Her failure to address her substance abuse issues and her continued criminal behavior, probation violations, and incarcerations demonstrate a broad pattern of conduct that renders her unfit to care for the Child. There is clear and convincing evidence to support the trial court's termination of Mother's parental rights on this statutory ground as well.

VIII. Best Interest of Child

When a parent has been found to be unfit by establishment of a ground for termination, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877. Tennessee Code Annotated § 36-1-113(i) provides a list of factors the trial court is to consider when determining if termination of parental rights is in the child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *In re Audrey S.*, 182 S.W.3d at 878. Further, the

best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances, or controlled substance analogues as may render the parent or guardian consistently unable to care for the

-14-

child in a safe and stable manner;

> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The trial court found that it was in the Child's best interest to terminate Mother's parental rights, as demonstrated by the court's relevant findings as to the following factors:

(a)    Respondent, Melisa [G.], has not maintained regular visitation or other contact with the child.

(b)    There is no meaningful relationship between the Respondent and child.

(c)    A change of caretakers and home is likely to have a highly negative effect on the child. The child is in an adoptive home and thriving in that placement.

(d)    Respondent, Melisa [G.], has shown brutality, abuse or neglect toward the child or another child in the family or household. When the children were removed on August 18, 2011, the mother tried to run over Samantha with a car and Anya witnessed this and remembers it to this day. The mother was allegedly high on crack cocaine at the time.

The proof preponderates in favor of these findings. In addition, when reviewing the evidence in light of the statutory factors, it is clear that Mother did not make an adjustment to her circumstances or conduct such that it would be safe for the Child to be in her home. Mother had failed a drug screen as recently as March 2013. Moreover, given the time involved and lack of effort expended by Mother in this case, an adjustment of circumstance does not reasonably appear possible. Mother did visit with the Child but did not demonstrate that she had a relationship with her. In fact, the foster mother testified that the Child was afraid of Mother and experienced nightmares and behavior reflecting regression after visits.

A present change in caretakers would likely have a detrimental effect given the Child's needs and Mother's inability or unwillingness to address her drug problem. Mother displayed neglect of and abuse toward the Child because of her drug use, and her home was not safe or appropriate as she continued in substance abuse. The Child was thriving in her current placement and had bonded well with the foster family, who wished to adopt her once that option was available. Mother's mental and emotional status would prevent her from providing a safe home or stability for the Child, as she resisted all efforts by DCS to extend help. Mother appeared to lack an appreciation of the significance of her problem. Finally, Mother had paid only token child support. The evidence does not preponderate against the trial court's determination, by clear and convincing evidence, that terminating Mother's parental rights was in the best interest of the Child.

## IX.  Conclusion

The judgment of the trial court terminating the parental rights of Mother is affirmed. Costs on appeal are taxed to appellant, Melisa G. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE